{¶ 49} I concur with the majority on all issues except Regency's first cross-assignment of error. In that assignment, Regency argues the trial court erred when it dismissed its claims against CDI for $61,602.25, the amount of money still owed to various subs.
 {¶ 50} The trial court determined that Regency did not have a breach of contract claim against CDI for its failure to pay the subcontractors because it "does not have a contractual relationship with any of the subcontractors on whose behalf it is attempting to collect money from CDI. Furthermore, no subcontractor has assigned Plaintiff any alleged claim against CDI. Plaintiff is, therefore, not in a position to bring claims against CDI on behalf of subcontractors."
 {¶ 51} Regency argues the court erred when it determined there had to be a direct contractual relationship between Regency and the unpaid subs in order to sustain its claim of breach against CDI. I agree. The trial court based its dismissal of Regency's breach of contract claim against CDI on the assumption that Regency was suing CDI on "behalf" of the subcontractors. The majority agrees with the trial court's rationale. There is nothing in the record, however, indicating that Regency was suing "on behalf" of anyone but itself.
 {¶ 52} Regency had moved merely to require certain subcontractors interplead their claims, not to sue on their behalf. An interpleader action is available to a party who may be exposed to double or multiple liability for an admitted debt. Civ.R. 22. The purpose of an interpleader is to "expedite the settlement of claims to the same subject matter, prevent multiplicity of suits, with the attendant delay and added expense, and to provide for the prompt administration of justice." Sharpv. Shelby Mutual Ins. Co. (1968), 15 Ohio St.2d 134, 144, 239 N.E.2d 49.
 {¶ 53} The procedure to be followed in an interpleader is outlined in Civ.R. 22. The rule provides, in pertinent part: "In such an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money * * *, a party may deposit all or any part of such sum * * * with the court upon notice to every other party and leave of court. The court may make an order for the safekeeping, payment or disposition of such sum or thing."
 {¶ 54} This rule "allows a party to deposit the money which is sought by the multiple claimants with the court upon notice to the parties and leave of court. The staff notes to Civ.R. 22 accurately describe an interpleader action as: `* * * a two-stage action. A stakeholder who controls a fund is subjected to the claims of two or more claimants. The stakeholder does not know who is the proper claimant. The stakeholder does not wish to pay the "wrong" claimant and thus expose himself to suit by the "proper" claimant. In the first stage, the stakeholder, in order to avoid a multiplicity of suits and possible multiple liability, interpleads the claimants. In the second stage, ordinarily, the stakeholder drops out, leaving the claimants to establish the validity of one of the claims. One claimant will be successful in the second stage.'" Lincoln Nat'l Life Ins. Co. v. Taylor (June 17, 1993), Franklin App. Nos. 92AP-1724, 92AP-1725, 1993 Ohio App. Lexis 3117, at *6-7.
 {¶ 55} When a dispute arises between a general contractor and owner concerning amounts unpaid to subcontractors on the job, the owner's request to interplead the subcontractors is proper. Sturm v. Ritz
(1876), 7 Ohio Dec. Reprint 135, 1876 Ohio Misc. LEXIS 117. Thus the trial court erred in denying Regency's motion to interplead the contractors.
 {¶ 56} Although Regency was denied the help an interpleader would make possible in straightening out what is yet owed to each subcontractor, the majority criticizes Regency for not proving the value of the damages it suffered from the breach.[5] For that reason, the majority concluded Regency has not satisfied all the elements of its breach of contract claim.
 {¶ 57} To prevail on a breach of contract, the party asserting the breach must present the following: a contract did indeed exist, the party asserting the breach performed, the other party breached the contract, and the non-breaching party suffered damages. Doner v. Snapp (1994),98 Ohio App.3d 597, 600, 649 N.E.2d 42.
 {¶ 58} Regency met this burden. Under Regency's contract with CDI, it is clear that CDI's failure to pay the subs would constitute a material breach. CDI admits it did not pay all the subcontractors. It also claims that "Regency has depleted the $131,652.71 it owes to CDI by unilaterally paying certain subcontractors." CDI states, "the total amount of Regency's `damages' would be only $102,631.00, which is about $29,000.00 less than what Regency owes CDI." The $102,631.00 sum reflects the amount of six mechanics' liens filed against Regency by some of the unpaid subcontractors. The amount of two of these liens is in dispute.
 {¶ 59} The trial court never reached the issue of damages, although the majority focuses on it here. The majority determined that "the extent of Regency's alleged damage as a result of CDI's failure to pay the remaining subcontractor(s) is speculative * * *."[6] The majority then concluded that "the evidence in this record is insufficient to establish damages." I disagree.
 {¶ 60} A mechanic's lien is not speculative. A mechanic's lien is a form of damage to one's real property. It is a cloud on the title of the property, which is typically removed when payment has been made to the lienholder. See Gustafson v. Buckley (1953), 96 Ohio App. 115,121 N.E.2d 280. The mere filing of a mechanic's lien, therefore, constitutes a nominal damage sufficient to satisfy the damage requirement in the breach of contract claim.
 {¶ 61} Regency presented sufficient evidence of damages simply by showing that six liens were filed, a direct result of CDI's breach in not paying the subcontractors. In Stockman v. Yanesh (1981), 68 Ohio St.2d 63,428 N.E.2d 417, defendants executed a warranty deed stating that there were no liens or encumbrances on the property plaintiffs purchased. After plaintiffs took possession of the property, they learned the property was in fact encumbered by several different liens including a judgment lien and a tax lien.
 {¶ 62} The Supreme Court of Ohio held: "A covenant against encumbrances is breached as soon as made if an encumbrance in fact exists. However, in an action based on such a breach, only nominal damages can be recovered unless the covenantee has removed the encumbrance, had his possession disturbed, or had his use or enjoyment of the land, in some way, interfered with by reason of the encumbrance." Id., at syllabus.
 {¶ 63} In the case at bar, the majority has not addressed the mere act of filing the mechanic's liens as creating an encumbrance that suffices to establish nominal damages. In the case at bar, CDI's obligation to pay all subcontractors was breached, resulting in six different liens being filed against Regency's property. Under Yanesh, Regency is at least entitled to nominal damages, which can satisfy the breach of contract claim. To support its claim that the damages are speculative, the majority cites to Regency's statement that "the only way to resolve the remaining subcontractor claims is through settlement or additional litigation presumably with the relevant subcontractors." Ante at 7. Regency's statement, however, goes to the extent of the damages, not to nominal damages, which is the issue here.
 {¶ 64} Moreover, when Regency presented the two disputed liens filed by Salman and Handyman, CDI, not Regency, had the burden to rebut the amounts it stated should be lower. CDI's records show that Salman and Handyman are owed $21,093.52. On the other hand, Regency's evidence shows that the total of the two liens amounts to $41,424, a difference of $20,330.48, that Regency may have to pay. The majority further argues that the record has "not definitively established the validity of the liens." That the amount of a lien is undetermined does not mean the lien is invalid, no more than the fact that the amount stated in an affidavit is in excess of the correct amount would render an affidavit invalid.Thomas v. Huesman (1859), 10 OS 152; Tucker Construction, Inc. v.Kitchen (March 1, 1995), Summit App. No. 16636. The burden of proving the validity of each lien, moreover, is not on Regency as CDI argues; that burden belongs to each person/subcontractor who has asserted a lien on the property in question. Bender v. Stettinius (1897), 10 Ohio Dec. Reprint 163, 1897 Ohio Misc. LEXIS 570.
 {¶ 65} In its appellate brief CDI complains that the mechanics' liens are invalid because notices of furnishings were not provided. CDI relies upon Regency's testimony that "it did not receive any Notice of Furnishings." CDI has omitted, however, the last part of Regency's testimony clarifying this statement. Regency went on to explain it did receive notices of furnishings, but it could not recall from which subcontractors. Tr. 290. CDI failed to pursue or clarify Regency's response at the time of its examination on re-cross. CDI also failed to present any of its own evidence that the liens were invalid. Moreover, CDI did not raise this argument during the trial or in its post-trial brief. Thus CDI has waived here any argument as to the invalidity of the mechanics' liens.
 {¶ 66} Since the trial court denied the interpleader request, the validity of the mechanics' liens must now be dealt with separately.
 {¶ 67} Regency acknowledges that additional litigation is necessary to resolve these subcontractor claims. The majority points to this acknowledgment presumably to support its claim that the element of damages is speculative. As I said earlier, this case is a breach of contract claim and nominal damages suffice for that claim. It would be in the second stage of the trial that the actual damages would have to be determined. At this stage of Regency's case for breach of contract, however, the necessary elements have been satisfied.
 {¶ 68} CDI further argues, again for the first time on appeal, that there can be no damages if Regency withheld from its payment to CDI the same amount specified in the four liens. I find this argument specious, first, because two other liens are in dispute and remain unpaid. Second, nominal damages are justified on all the claims because of the filing of mechanics' liens and the undisputed breach of contract. Third, plaintiff is owed attorney fees on this breach.
 {¶ 69} The majority also argues Regency's claim for breach is speculative because none of the unpaid subs brought a suit against Regency. I disagree, again for the same reason that the filing of the mechanics' lines suffices for nominal damages. Moreover, there is nothing speculative about the fact that Regency remains vulnerable to at least two of the subs who filed liens for amounts that would push Regency's total cost beyond its contract with CDI. Without a judgment that CDI breached the contracts by failing to pay them, Regency is at risk of a result inconsistent with the undisputed facts in this case. Regency is entitled to have a final judgment and record of the fact that CDI breached the contracts by failing to pay the subcontractors.
 {¶ 70} The record shows that Bartrum's position on CDI's liability and the amounts owed to the subcontractors continually shifted. In Bartrum's opposition to the motion to interplead the subcontractor's claims, Bartrum agreed that "CDI has not contested these [the subcontractor's] claims." Brief at 2. At trial and in his appellate brief, however, Bartrum stated here and below that Salman's lien was for $34,649 but CDI claimed only $14,793.52 was owed. Handyman's lien was for $6,775, but CDI's records show only $6,300 was owed. Tr. 282; App. Brief p. 8. Even though the amounts of the two liens are disputed, Bartrum states, "Regency could have discharged all of the mechanics' liens by paying those subcontractors $102,631.00." App. Brief at 26. CDI cannot be allowed to argue there is no contest on the amounts owed, an argument used to oppose the motion to interplead, only to argue later that two liens are disputed, when the issue shifts to damages.
 {¶ 71} The facts in evidence demonstrate that CDI, by its own admission, breached its contract by not paying subcontractors. This admission is enough evidence for Regency to prove its claim against CDI for breach. The undisputed evidence of six mechanics' liens being filed is enough to prove a claim for nominal damages at the very least.[7]
The majority errs in deciding otherwise.
 {¶ 72} For the foregoing reasons, I would sustain this assignment of error and enter judgment for Regency against CDI for breach of contract.
[5] The majority misunderstands the reason I discuss the court's denying an interpleader. It is true appellant failed to appeal this order. However, it is reasonable to observe an obvious judicial error toexplain why appellant did not establish the extent of his damages. Such background should also alert the court to avoid compounding the error by requiring more evidence than is necessary to establish mere nominal damages.
[6] Had Regency's motion to interplead been granted, the very evidence the majority says is missing in this case could have been produced.
[7] More troubling is the effect of any subsequent litigation between Regency and the subcontractors it tried to interplead. Regency will be estopped from looking to CDI for recompense, under the doctrine of res judicata or collateral estoppel. National Amusements, Inc. v. Springdale
(1990), 53 Ohio St.3d 60, 558 N.E.2d 1178; Grava v. Parkman Twp. (1995),73 Ohio St.3d 379, 653 N.E.2d 226. Such a result is highly prejudicial to Regency. Moreover, if there is subsequent litigation between Regency and the unpaid subcontractors, there may be more significant damages involved if Regency ends up paying the face amount of the Salman and Handyman liens as opposed to the lesser amount CDI shows in its records.